

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-5311
Re: Does the transportation of
kerosene distillate and motor
fuel constitute the class of
oil pipeline companies as de-
fined in Chapter 4, Title 122,
with amendments, Tax on Intan-
gible Assets?

Your request for an opinion on the above matter has
been received and carefully considered. We quote from your
request as follows:

"Re: Stratton Pipe Line
Corporation

"The above corporation was incorporated in
Texas August 30, 1940. They are empowered to
operate as an oil pipeline company under Chap-
ter 15, Title 32, R. C. S. 1925. Their princi-
pal business is the transportation of distillate
and/or hydrocarbons extracted from natural gas.
They operate a double line of approximately 41½
miles from the field to their terminal at Corpus
Christi, Texas; one line being 4" and one line
6 5/8". A copy of their letter is herewith en-
closed for your information.

"They have filed a report, under protest,
and state that they are not and have not at any
time engaged in the transportation of oil. They
transport the motor fuel and kerosene distillate

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Geo. H. Sheppard, Page 2

from four natural gas recycling plants. The producers of these products pay the tax as provided for in Article 7047 B and the residue is returned by the recycling method to the same gas producing formation underlying the land from which the gas is produced. During the year 1942, they transported 2,255,986 barrels on which they charged tariffs in the amount of $211,657.36. This pipeline has all the aspects of an oil pipeline, in as much as it is separately incorporated. It has a superintendent, and pays federal transportation and income taxes on its net income.

"The main problem here, is whether or not the transportation of kerosene, distillate and motor fuel constitutes the class of oil pipeline companies, as defined in Chapter 4, Title 122, with Amendments, Tax on Intangible Assets. . . ."

In addition to the facts stated by you, we have checked the charter of this corporation in the office of the Secretary of State and find the purpose thereof, as stated in said charter, to be as follows:

"2. The purpose for which it is formed is to store, transport, buy and sell oil, gas, salt, brine and other mineral solutions, including the privileges and powers granted by and authorized in Chapter 15, Title 32, Revised Civil Statutes of Texas, which is hereby adopted."

You state that the producers of the products transported by this company have paid the taxes provided for in Article 7047b. This article provides for an occupation tax on producers of natural gas and, as amended by the Acts of the 47th Legislature in 1941, page 269, Chapter 184, Article II, Section 1, said article provides that:

"Where gas is processed for its liquid hydrocarbon content and residue gas is returned by recycling methods to the same gas-producing formation underlying the land from which the gas is produced, the taxable value of such gas shall be three-fifths (3/5) of the gross value of all products extracted, separated and saved from such gas."

Honorable Geo. H. Sheppard, Page 3

We also understand that the producers of the products transported by this company have not paid the taxes provided for in Article 7057a, which levies an occupation tax on oil produced within this state, Section 2 of which was amended by the Acts of the 47th Legislature in 1941, page 269, Chapter 184, Article I, Section 1.

It is the opinion of this department that said company is not subject to the provisions of Chapter 4, Title 122, of the Revised Civil Statutes of Texas, and in support of this conclusion we direct your attention to the following:

The statutes under which this company was incorporated contain the following provisions: Article 1495 is in part as follows:

"This Chapter embraces corporations created for the purpose of storing, transporting, buying and selling oil, gas, salt brine and other mineral solutions and liquified minerals; . . . and the production of oil and gas. (As amended Acts 1935, 44th Leg., p. 296, ch. 110, § 2.)"

Article 1496 is in part as follows:

"Such corporations shall have power:

"1. To store and transport oil, gas, brine and other mineral solutions and liquified minerals, . . . . and to make reasonable charges therefor. (As amended Acts 1935, 44th Leg., p. 296, ch. 110, § 3.)"

Article 7105 of said Chapter 4, Title 122, as amended by the 47th Legislature, 1941, page 269, Chapter 184, Article XIII, Section 1, in which amendment no change was made affecting the matter here under consideration, is in part as follows:

"Each incorporated . . . oil pipe line company, and all common carrier pipe line companies of every character whatsoever, engaged in the transportation of oil, . . . doing business wholly or

Honorable Geo. H. Sheppard, Page 4

in part within this State . . . and every other
individual, company, corporation, or association
doing business of the same character in this State,
in addition to the ad valorem taxes on tangible
properties . . . shall pay an annual tax to the
State, beginning with the first day of January
of each year, on their intangible assets and pro-
perty, and local taxes thereon to the counties in
which its business is carried on."

Article 7057a, Section 1(5), of the Revised Civil
Statutes, defines oil as follows:

"(5). 'Oil' shall mean crude oil, or other
oil taken from the earth, regardless of gravity
of the oil."

So far as we have been able to ascertain oil is
considered to be a different mineral product from gas, or
the liquid hydrocarbons produced from gas, in fact Article
7047b of the Revised Civil Statutes, hereinabove referred
to, contains a provision that "all liquid hydro-carbons that
are recovered from gas by means of a separator or by other
non-accountable methods shall be taxed at the same rate as
oil as levied by Article I of this act", thereby clearly
showing that products of gas are not oil, at least they are
no so considered for tax purposes.

In order to bring this company within the terms of
Chapter 4, Title 122, it must be held that it is an "incor-
porated oil pipeline company" engaged in the transportation
of oil, or that it is a "common carrier pipeline company" of
some character engaged in the transportation of oil, or that
it is "doing business" in this state of the "same character"
as one or the other of said concerns.

The intangible tax law was originally passed in
1905. It was amended in 1907 and again in 1933. The 1933
amendment inserted for the first time the words: "oil pipe-
line company and all common carrier pipeline companies of
every character whatsoever, engaged in the transportation of
oil". This amendment of 1933 expressed its Legislative in-
tent and purpose in the following provision:

"The purpose hereof is to place all common
carrier oil pipe line companies under all of the

Honorable Geo. H. Sheppard, Page 5

provisions of the Intangible Asset Tax Laws of
this State; and, for the purpose of placing under
said act all taxpayers similarly situated, and
to bring about a better classification and a wider
distribution of the burdens of taxation, as far
as this class of taxpayers is concerned."

In dealing with this statute in a case wherein it
was necessary to construe its meaning, the Eastland Court of
Civil Appeals made the following holding in the case of Col-
Tex Refining Company v. Hart et al., 144 S. W. (2) 909, writ
refused:

"In this language the purpose of the act is
clearly expressed. It was designed to extend the
terms of the intangible tax measure to a strong
and growing class of taxpayers who had thereto-
fore escaped this particular type of tax. This
class was made up of (incorporated) 'pipe line
companies', 'common carrier oil pipe line companies
of every character whatsoever' and 'all taxpayers
similarly situated', and in so extending it, it
was designed to 'bring about a better classifica-
tion and a wider distribution of the burdens of
taxation, as far as this class of taxpayers is
concerned'.

"Naturally a common carrier oil pipe line
company would carry on the business of transport-
ing oil by pipe lines as its business and presump-
tively for hire. It would be a revenue producing
concern within itself, and as such would readily
fall within the class of taxpayers presumably sub-
ject to the intangible tax or sought to be subject-
ed to that tax.

"Upon the same principle and for the same rea-
sons, an incorporated oil pipe line company would
be carrying on the business of transporting oil by
pipe line. The business would have as its object
a profit or income for the owner, and that would
be true whether it was a private or public carrier.
The very purpose of its existence and nature of
its business at once suggest it was similar in
situation (as a subject for taxation) to that of

Honorable Geo. H. Sheppard, Page 6

the common carrier pipe line company, and, there-
fore, a proper subject for the application of the
intangible tax measure which the Legislature was
seeking to extend to taxpayers 'similarly situated'.
It would, therefore, seem logical not only to
bring such companies within the spread of this
tax measure, but also to extend the same and dis-
tribute its burden to '* * * every other indivi-
dual, company, corporation or association doing
business of the same character in this State'.
Art. 7105.

"The section of the statute just quoted de-
signates a class of persons which would logically
fall within the terms of the intangible tax mea-
sure as definitely as the first two classes dis-
cussed. The provision leaves no doubt as to who
would be embraced in its terms. It specifically
mentions 'every other individual, company, corpor-
ation' doing business of the same character, re-
ferring, of course, to incorporated oil pipe line
companies and common carrier pipe line companies
engaged in the transportation of oil in this State.
In the first place, every such 'individual, cor-
poration,' etc., would have to be engaged in busi-
ness within the State and that business would have
to be of the same character as that being done by
the incorporated pipe line company, carrier, etc.,
that is, engaged in the transportation of oil as
a business, and presumptively for hire. . . ."

In holding that the Col-Tex Refining Company was
not an "oil pipeline company", or a corporation doing busi-
ness of the "same character", within the meaning of Article
7105, and, therefore, not subject to the tax provided for
therein, said Eastland Court of Civil Appeals called atten-
tion to the fact that "at the time (1933) the words 'each
* * * oil pipe line company * * * of every character what-
soever, engaged in the transportation of oil' were inserted
in the intangible tax law, and Art. 7105 took its present
form, Art. 6018, R. C. S. 1925, was then a part of our gen-
eral statutes and had been since 1917." A reference to said
Article 6018 shows that pipeline carriers which are therein
declared to be common carriers are such as transport "crude
petroleum" only, therefore, the company here under considera-
tion could not possibly come under the terms "common carrier

Honorable Geo. H. Sheppard, Page 7

pipeline company", as set out in said Article 7105. Neither could it come under the term "oil pipeline company" since it does not transport "oil".

We also direct your attention to the fact that the opinion in the case of Col-Tex Refining Company v. Hart et al., supra, was handed down on October 11, 1940, and rehearing denied on November 8, 1940, and that thereafter the 47th Legislature amended Article 7105 in 1941, but that it made no change in said article insofar as the matter here under consideration is concerned. By this amendment said Intangible Tax Law was made to apply to each "motor bus company", as defined in the Acts of the Legislature therein referred to, and each "common carrier motor carrier" operating under authority of the Railroad Commission, but said law was not amended so as to include the transportation of products of natural gas such as are here being considered. This evidently was an approval of, or an acquiescence in, by the Legislature of the holding in said opinion, as well as the construction placed upon said law by your department in accepting payment of taxes under Article 7047b, rather than under Article 7057a, the general rule governing such situation being set out in 39 Tex. Jur., sec. 132, pp. 248-251, in the following language:

"Doubtless the Legislature, in enacting, amending or repealing a statute, may be presumed to have known facts of common notoriety in the State, as well as any circumstances or conditions affecting or relating to the particular enactment. And it may be presumed that the Legislature 'knew', 'had in mind', or 'was familiar with' the 'law of the land', that is, the Constitution, the common law, existing statutes and the effect thereof; also prior decisions of the courts,--at least those of last resort,--pertaining to the subject-matter.

"The Legislature is presumed to have understood the meaning of language that it employed, and to have known the construction placed upon the same or a similar statute by the appellate courts and by executive or administrative officers. And it may be presumed, in a proper case, that the Legislature has acquiesced in the construction of a particular act, or that if it had not been satisfied with such construction it would have changed the verbiage of the law so as to show a contrary intention.

". . . ."

Honorable Geo. H. Sheppard, Page 8

This company not being an oil pipeline company, or a common carrier pipeline company, engaged in the transportation of oil, and not being a company engaged in doing business of the same character, as set forth and described in said Article 7105, we think it is clear that it does not come within the class of oil pipeline companies as defined in Chapter 4, Title 122, and amendments.

Trusting that this satisfactorily answers your inquiry, we remain

APPROVED MAY 26, 1943

FIRST ASSISTANT
ATTORNEY GENERAL

Very truly yours

ATTORNEY GENERAL OF TEXAS

By Jas. W. Bassett

Jas. W. Bassett
Assistant

JWB:mp



APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN